MARVIN, Judge.
Plaintiff (L&A) appeals from the rejection of its demands for property damage arising out of a head-on collision between its engine and an engine of defendant (Rock Island). We affirm the trial court.
By agreement, Rock Island uses L&A track between Alexandria and Winnfield to reach its own track which extends northerly from Winnfield. The agreement provides that the railroad solely at fault in a collision between engines or trains shall be responsible for the entire loss. It also provides that each railroad shall bear its own loss in case the collision is caused by the fault of both railroads or in ease the cause of the collision is so “concealed” that fault cannot be determined. The Operating Rules of L&A also apply to Rock Island trains which use the L&A track.
The Operating Rules provide in part that “. . . within yard limits second and inferior class trains, extra trains and engines must move at restricted speeds.” Restricted speed is defined as a speed at which a train “. . . proceed[s] prepared to stop short of a train, engine, obstruction or switch not properly lined.” The L&A Timetable also contains operating rules which are pertinent. It provides in part:
“Within restricted speed territory, yard engines, locals and dodgers, will keep informed of through train movements and will clear main track on the approach or if practical before the approach of through train movements, avoiding all delay possible.”
For a number of years each railroad has operated a daily train which runs northerly through Winnfield. The Rock Island train follows close behind the L&A train. Once *165 the Rock Island train reaches Winnfield, it enters on its own track, proceeds to El Dorado, Ark., and then returns through Winnfield to Alexandria.
The collision complained of occurred in the Winnfield yard of L&A in twilight about 7:30 p.m. when it was rainy and foggy. Shortly after the L&A northerly train had passed through the Winnfield yard, an L&A dodger or switch engine entered onto the main track pulling 16 cars loaded with wood chips to switch these cars to storage tracks within the yard. At the same time, the northerly Rock Island train (three diesel engines pulling 44 cars and a caboose) was approaching or entering the Winnfield yard on the main track. The two trains collided some 3,100 feet north of the southerly limits of the Winnfield yard. The engineer on each train had unobstructed visibility of at least 1,100 feet, except of course as affected by the fog and rain. Each train was thrown into emergency at about the same time when its respective engineer saw or was told of the other train.
The lower court found that both trains were at fault in contributing to the cause of the collision. The record supports the lower court’s findings (1) that the Rock Island train failed to reduce its speed in accord with the restricted speed rule when it approached and entered the Winnfield yard and (2) that the L&A train failed to clear the main track (or by implication entered upon the main track when it was unsafe to do so) at a time when the approach of the Rock Island train was imminent. The lower court stated that L&A’s “. . . failure to clear the main track for [Rock Island’s] through train . [in violation of the Timetable rule] was a contributing cause [of] the accident.”
L&A complains that the lower court erred (1) in not finding that the sole cause of the collision was Rock Island’s violation of the restricted speed rule and (2) in applying the rule of the Timetable (yard engines will clear main track on the approach of a through train), when the Rock Island train was not a “through train” within the meaning of the Timetable. The Operating Rules and the Timetable have been reviewed with the other evidence in the record. These rules are expressly designed for the paramount, and often expressed, purpose of the safe operation of the railroad and the protection of people and property. In this context, these rules are in harmony with our general law of negligence or fault as set forth in our civil code articles and cases applying and interpreting them.
The term through train is not defined in the Operating Rules or Timetable. An officer of L&A testified that the Rock Island train was not a through train because it did not “operate” from one end of the district (Pineville Junction) to the other (Minden, La.), as did the L&A train which it was following. L&A also complains that Rock Island did not plead or make an issue out of the Timetable provisions until the case was briefed in the lower court.
The rules which are before us, as well as the fault concept of our law, clearly establish certain duties on each train here involved, whether the Rock Island train is or is not technically a through train. The Rock Island train, proceeding through the Winnfield yard on the main track, was clearly under a legal duty to slow to a speed which would have been reasonably safe under the existing circumstances. There was a concurrent legal duty on the L&A train, switching cars in the yard, to avoid obstructing or entering upon the main track during the time when it was, or should have been known that a train was going to be proceeding through the yard on the main track.[1] Each respective duty exists whether the basis therefor is the rule, the law of negligence, or both. Each train violated its *166 duty to the other, whether or not the Rock Island train is technically a through train.[2]
Even according to the reasoning of the L&A official, the Rock Island train could be said to be a through train. It traversed the “district” (from Pineville Junction to Min-den) because it proceeded from Alexandria into the State of Arkansas, albeit on its own track north of Winnfield. But should we agree arguendo, that the Rock Island train was not technically a through train, we find no error on the part of the lower court in concluding the L&A yard train should have known of the approach of the Rock Island train through the yard on the main track and should have cleared the main track.
Where the defendant’s pleading gives fair notice to the plaintiff that the plaintiff’s negligence is at issue, even as the sole cause of the accident, the defense of contributory negligence is deemed properly at issue, notwithstanding that it has not been affirmatively set forth as an affirmative defense. The issue of L&A’s negligence was raised by the pleadings here. C.C.P. Art. 1005; Cain v. Houston General Insurance Company, 327 So.2d 526 (La.App.2d Cir. 1976), cert. denied; Paxton v. Ballard, 289 So.2d 85 (La.1974).
The agreement between the litigants adopts our law of contributory negligence. We find no error in the lower court’s determination of factual issues holding both litigants at fault in causing the collision. At appellant’s cost, judgment is
AFFIRMED.

. The Timetable provision requires yard engines, locals and dodgers, to be aware of through train movements on the main track for the purpose of avoiding possible delay to trains on the main track. Conversely, the Rock Island train was certainly not a yard engine, a local or a dodger, and it had the right, under the agreement (dated in 1925) and the manner in which it had operated for several years, to proceed through the Winnfield yard on its daily journey.

. Testimony conflicted as to whether or not the L&A train had come to a stop before the collision. The stop, if it did occur, was only a second or so before the collision. The trial court did not specifically resolve this factual conflict apparently (and correctly, in our opinion) because the proximity in time of the alleged stop and the collision made it immaterial on the ultimate issue.